**In the Matter of the DISCIPLINE OF Richard James HOPEWELL, as an Attorney at Law.**

No. 18103.

Supreme Court of South Dakota.

Original Proceeding

Argued Sept. 2, 1993.

Decided Nov. 3, 1993.

R. James Zieser, Tyndall, for complainant Disciplinary Bd.

Carleton R. Hoy of Hoy and Hoy, Sioux Falls, for respondent Hopewell.

GILBERTSON, Circuit Judge.

## INTRODUCTION

This is a disciplinary proceeding against Richard Hopewell (Hopewell), a member of the State Bar of South Dakota. For the most part, he has admitted the factual allegations against him. There remains for this Court, the issue of a determination of the appropriate manner of discipline. The Disciplinary Board of the State Bar of South Dakota has recommended public censure. The Referee, after entering his findings of fact, recommended public censure, Hopewell pay all costs associated with the proceedings and that Hopewell be ordered to take and achieve a passing score on the Multi–State Professional Responsibility Examination.

## FACTS

Hopewell was admitted to the practice of law in South Dakota on the 16th day of August, 1962. Thereafter he commenced a private practice of law and is presently a sole practitioner in Sioux Falls, South Dakota.

In 1990 Hopewell entered the judicial election in the Second Judicial Circuit against incumbent Circuit Judge Gene Paul Kean. As a candidate, Hopewell was invited to attend a conference on May 11, 1990 wherein the campaign rules governing a judicial candidacy were presented. Hopewell failed to attend this conference. On July 16, 1990, he subsequently received a letter from the State Bar detailing the responsibilities of a candidate for judicial office under the South Dakota Rules of Professional Conduct ("Rules") and the South Dakota Code of Judicial Conduct ("Code").[1] The letter informed Hopewell that if he had any questions on the ethics of campaigning, he could contact the chairman of the Judge's Association Ethics Committee for guidance. Attached to the letter was a copy of the South Dakota Code of Judicial Conduct.

On August 26, 1990 Hopewell released a document to those in attendance at the Annual NAACP Picnic in Sioux Falls under his signature. This "press release" claimed Hopewell was a "friend compatriot and advocate" for the "Native Americans, blacks, farmers, women and other distressed elements of society." This press release on Hopewell's legal stationary continued:

> I am a candidate for reform of the Courts in Minnehaha County. If elected this coming November 6, I will be in a position to publicly reveal specifics of corruption of justice in the Minnehaha County Courthouse, which opportunity [sic] now denies [sic] me by the constraints of rules established by the South Dakota Judicial Election Campaign Guideline Committee com-

---

1. Canon Seven of the Code concerning political activities and campaign conduct applies to any candidate for judge, whether currently holding office or seeking it. *See also In re Gorsuch,* 76 S.D. 191, 75 N.W.2d 644, 649 (S.D.1956).

prised of incumbent State Judges and power brokering lawyers for vested interests. Rules of this Committee forbid me to expose judicial corruption, take issue with regressive decisions in the past made by my opponent, or to make public sharp jurisprudential philosophical differences Judge Kean and I have on the administration of justice in our local courts. The judicial campaign rules are in dire and urgent need for reform.

Where Judge Kean no doubt has a campaign treasury chest heavily laden with lavish contributions by politically influential lawyer and lobbyist power brokers for liability risk insurance companies, finance, environmental polluters and the heavy handed law enforcement establishment of this community, my campaign shall continue to refuse contributions from lawyers and lobbyists for the vested interests which now corrupt our system of justice.

Hopewell also announced that he had received $50.00 in campaign contributions and named the two contributors. He pledged to publicly disclose the names of his future contributors and the amounts of the contributions. Hopewell challenged Judge Kean and Kean's campaign committee to do the same.

On September 28, 1990 Hopewell delivered a speech to the Minnehaha County Democratic Forum in Sioux Falls. In that speech Hopewell accused Judge Kean of giving "the most severe of punishments" under the "cruel and deceptive guise of deterrence of crime" on "juvenile Native American offenders" as D.A. Hopewell went on to announce he was a judicial progressive and that Judge Kean "is a judicial reactionary."

Hopewell accused Judge Kean of running a "patronage system" in the selection of court-appointed defense counsel. The judge was further accused of "can't do enough for lawyer friends." Hopewell also stated that competency is no longer a factor in court appointments and that through this discriminatory process, defendants are not getting the most effective representation.

Hopewell also criticized Judge Kean's handling of *Yarnall v. Yarnall,* 460 N.W.2d 161 (S.D.1990), a child custody matter. At that time *Yarnall* was still an on-going case.

Hopewell was not involved in the case and his comments on Judge Kean's handling of the case were from other than actual observation.

Hopewell counters that when the speeches were delivered, he removed some of the more inflammatory portions. However unedited printed texts were made available to the public and attending press at both events. At oral argument Hopewell stated that at least portions of both speeches were published in the Sioux Falls Argus Leader, the largest circulating newspaper in the state.

Hopewell called the Referee's attention to an article published in the Sioux Falls Argus Leader on March 4, 1993. It makes reference to a statement Hopewell gave the Argus Leader which was published on October 23, 1990, just days before the election.

It's true I was found nude at the Alick Drug. It should be noted, however, that it occurred as a result of an hallucinogenic experience induced by my having been surreptitiously drugged with what I'm told is called PCP by a secret agent of a political adversary who was noted for his dirty tricks and unethical behavior, and is now very probably allied with Gene Paul Kean and who may well have advanced this information to you for purposes of my campaign embarrassment.

In a brief filed with this Court in *State v. Schmidt,* 482 N.W.2d 325 (S.D.1992), Hopewell claimed that Circuit Judge Martin of the Third Circuit had promised Hopewell's client, Schmidt, a lenient sentence thus convincing Schmidt to plead guilty. Hopewell, in the brief, alleged Judge Martin reneged on this promise and gave his client six months in jail. Both the Board and the Referee found that Judge Martin made no such statement.

Hopewell in his response to the Board's formal accusations concerning the Judge Martin incident, informed this Court that as he was accused of attacking the integrity of a judge, it was impossible for Hopewell to get a fair and impartial hearing in front of the Disciplinary Board "and this Court." He demanded a jury trial to determine which was correct, Judge Martin's version of the facts or Hopewell's version of the facts.

At the June 12, 1991 hearing before the Disciplinary Board, Hopewell appeared and admitted he violated the ethical rules and canons. Inexplicably he then proceeded to re-affirm many of his previous public statements he made and in some cases the statements before the Board were more extreme and irresponsible than the original public statements.

The Referee found that Hopewell now shows a genuine remorse and true contrition for his numerous violations of the Rules of Professional Conduct and the South Dakota Canons of Judicial Conduct. Hopewell states he has formally apologized to Judge Kean, Judge Martin and at oral argument apologized to this Court for any embarrassment he has caused to the legal system.

## LEGAL ANALYSIS

*1. The August 26, 1990 NAACP Press Release and Speech*

■ The statements that there exists "a collapse of rule of law" and the implication that Native Americans, blacks, farmers, women and other "powerless financially distressed nonvested" elements of society are not being treated fairly and impartially by the judiciary were found by the Board and the Referee to be a violation of Rule of Professional Conduct 8.2(b). That rule requires that a lawyer who is a candidate for judicial office comply with the applicable provisions of the Code [2]. Canon 2A of the Code requires that "a judge should respect and comply with the law and should conduct himself at all times in a manner which promotes public confidence in the integrity and impartiality of the judiciary." We concur with the

determination of the Board and Referee. During a judicial campaign, a candidate may in an appropriate manner accurately criticize a sitting judge, but may not impugn the integrity of the judicial system. *Matter of Riley*, 142 Ariz. 604, 612, 691 P.2d 695, 703 (Ariz.1984).

■ The Board and Referee found that Hopewell's statement that he would expose the specifics of corruption of justice in the Minnehaha County Courthouse to be violations of Rule 8.2(b) and Canons 1 [3], 2 A and 7 B(1)(a).[4] The same findings were made concerning Hopewell's statement that the system of justice was now corrupt because of the influence of "politically influential lawyer and lobbyists, power brokers for liability risk insurance companies, finances, environmental polluters and heavily handed law enforcement establishment." We concur with the determination of the Board and Referee. *See In re Kaiser*, 111 Wash.2d 275, 759 P.2d 392, 396–7 (Wa.1988).

The comment that the "South Dakota Judicial elections campaign guidelines committee compromised of incumbent state judges and pawnbrokering lawyers for vested interests" have gagged Hopewell is found to be a violation of Rule 8.2(b) and Canons 1, 2 A, 7 B(1)(a) and 7 B(1)(c).[5]

The Board and Referee found that Hopewell's statement that Judge Kean had a "campaign treasury heavily laden with lavish contributions by politically influential lawyers and lobbyists, power brokers for liability risk insurance companies, finance environmental polluters and a heavy handed law enforcement establishment of this community" to be

---

2. This Court repealed the then existing Code effective July 1, 1993 and in its place adopted a new South Dakota Code of Judicial Conduct. The new Code is largely based on the ABA Model Code of Judicial Conduct. All allegations in this case now before us occurred under the pre-July 1, 1993 Code and are subject to the provisions of that Code.

3. An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved.

The provisions of this Code should be construed and applied to further that objective.

4. A candidate ... should maintain the dignity appropriate to judicial office and should encourage members of his family to adhere to the same standards of political conduct that apply to him.

5. A candidate ... should not make pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office; announce his views on disputed legal or political issues; or misrepresent his identity, qualifications, present position or other fact.

violations of Rule 8.2(b) and Canons 1, 2 A, 7 B(1)(a) and 7 (B)(1)(c). We agree.

### 2. The September 28, 1990 Speech and Press Release to the Minnehaha County Democratic Forum and Attending Press

The Board and Referee found Hopewell's comments concerning Judge Kean's "cruel and deceptive guise of deterrence" in handing down punishment to Native American offenders such as D.A. to be violations of Rule 8.2(b) and Canons 1, 2 A and 7 B(1)(c). The same findings were made concerning Hopewell's charges that Judge Kean "has no faith in the possibility of rehabilitation" and is a "judicial reactionary." We concur in the determination of the Board and Referee. *See Riley, supra,* 142 Ariz. at 613, 691 P.2d at 704; *Kaiser, supra,* 759 P.2d at 397.

Hopewell's comments alleging Judge Kean made criminal appointments based on patronage rather than competency and that this abuse negatively affected the quality of an indigent's representation, were found to be violations of the Rule 8.2(b) and Canons 1, 2 A and 7 B(1)(c). We agree. *In re Sawyer,* 360 U.S. 622, 636, 79 S.Ct. 1376, 1383, 3 L.Ed.2d 1473, 1483 (1959).[6]

Hopewell's criticism of Judge Kean's handling of the *Yarnall* case was found to be a violation of Rule 8.2(b) and Canons 2 A and 7 B(1)(c). As the case was still on-going at the time the comments were made, Hopewell did violate the above rule and canon. "It is impermissible to litigate by day and castigate by night." *In re Sawyer, supra,* 360 U.S. at 635, 79 S.Ct. at 1383, 3 L.Ed.2d at 1483. *See*

also *In re Gorsuch,* 76 S.D. at 198, 75 N.W.2d at 648 (1956).

■ Hopewell's acceptance of campaign contributions, publicly announcing the names and amounts thereof and challenging Judge Kean to do the same was found to be violations of Rule 8.2(b) and Canon 7 B(2).[7]

### 3. The Argus Leader Articles

The Argus Leader article of October 23, 1990 was apparently received by the Board as an exhibit. Subsequently Hopewell asked the Referee to consider the similar March 4, 1993 article. The Referee was unable to arrange a supplemental hearing and instead opted to include them in the record and consider them in his recommendations. The articles speak for themselves and both Hopewell and his attorney were offered an opportunity to comment on them at oral argument before this Court.

The allegation by Hopewell that he was drugged by a person Hopewell believes was subsequently aligned with Judge Kean in the campaign is found to be a violation of Rule 8.2(b) and Canons 1, 2 A and 7 B(1)(a). As we held in *In re Lacey,* 283 N.W.2d 250, 252 (S.D.1979):

> That respondent sought instead to voice his complaints in precisely the manner and forum that would most likely cast doubt upon the competence and integrity of the member of the judiciary without the slightest possibility that any constructive, remedial actions would result from those remarks belies respondent's assertions that

---

**6.** In *Sawyer* the United States Supreme Court drew the following distinction between permissible and impermissible comments on a judge by an attorney. The public attribution of honest error on the part of the judge or judiciary is no cause for professional discipline. Likewise, to say " 'the law is a [sic] ass, a [sic] idiot' is not to impugn the character of those [judges] who must administer it." 360 U.S. at 634, 79 S.Ct. at 1382, 3 L.Ed.2d at 1482. "Dissenting opinions in our reports are apt to make petitioner's speech look like tame stuff indeed." 360 U.S. at 635, 79 S.Ct. at 1383, 3 L.Ed.2d at 1483. However, publicly announcing a judge is "corrupt or venal or stupid or incompetent" crosses the line into unprofessional conduct.

**7.** A candidate, including an incumbent judge, for a judicial office that is filled by public election

between competing candidates should not himself solicit or accept campaign funds, or solicit publicly stated support, but he may establish committees of responsible persons to secure and manage the expenditure of funds for his campaign and to obtain public statements of support for his candidacy. Such committees are not prohibited from soliciting campaign contributions and public support from lawyers. A candidate's committees may solicit funds for his campaign no earlier than 90 days before a primary election and no later than 90 days after the last election in which he participates during the election year. A candidate should not use or permit the use of campaign contributions for the benefit of himself or members of his family.

he made the statement in good faith and the spirit of constructive criticism.

### 4. The Dispute With Judge Martin over State v. Schmidt

The Board and Referee found that Judge Martin never made the statements claimed by Hopewell that Judge Martin promised leniency in exchange for a guilty plea and then entered a substantial jail sentence. This was found to be violations of Rules 8.4(c)[8], (d)[9] and 3.3.[10]

■ Hopewell's demand for a jury trial concerning the dispute with Judge Martin is without merit. Art. V, § 12 of the South Dakota Constitution places the ultimate authority over the discipline of attorneys solely with this Court. *Matter of Discipline of Russell,* 493 N.W.2d 715, 716 (S.D.1992). This provision also vests this Court with rule making authority for the administration of "all courts." Pursuant to that authority we adopted Rule 78–1, now SDCL 16–19, which sets up the procedure for handling disciplinary cases. We have also adopted both the Rules and Code which are the legal basis for the charges against Hopewell. There is nothing in any of these provisions nor in Art. VI, § 6 and its explanatory case law, which suggests Hopewell is entitled to a jury trial on this matter.

■ This Court has long held that while the findings of the Referee are not conclusively binding upon this Court, "they are nevertheless entitled to our careful consideration." *Matter of Discipline of Strange,* 366 N.W.2d 495, 497 (S.D.1985). The findings of fact of the Referee where supported by the evidence, will not be disturbed by this Court. *In re Jaquith,* 79 S.D. 677, 117 N.W.2d 97 (S.D.1962); *Strange, supra.* Upon a careful review of the record we affirm the findings of the Referee and agree with his determination concerning violation of the applicable rules and canons.

### 5. Disciplinary Considerations

■ The purpose of attorney disciplinary proceedings is not to punish the attorney but to remove from the profession those whose misconduct has proven them unfit to be entrusted with the duties and responsibilities belonging to the office of an attorney. This is to protect the public from further wrongdoing both by the attorney charged with the misconduct and the bar in general. *Matter of Tidball,* 503 N.W.2d 850 (S.D.1993), *citing Matter of Walker,* 254 N.W.2d 452, 455 (S.D. 1977) and *Matter of the Discipline of Dana,* 415 N.W.2d 818, 823 (S.D.1987). *See also In re Gorsuch, supra,* 75 N.W.2d at 649. "Public confidence that the legal profession, under the supervision of this Court, can keep its affairs in order must be zealously maintained." *Tidball, supra* at 856, *citing In re Kunkle,* 88 S.D. 269, 218 N.W.2d 521, 527 (S.D.1974).

As noted by the Referee, Hopewell's violations are especially serious because during the 1990 election campaign, no effective sanction was in place to halt Hopewell's unprofessional conduct prior to the election. This state has a compelling interest in the integrity of its judiciary. *Stretton v. Disciplinary Bd. of S.Ct. of Pa.,* 944 F.2d 137, 142 (3rd Cir.1991), *citing Cox v. Louisiana,* 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965). *See also In re Fadeley,* 310 Or. 548, 802 P.2d 31, 44 (Or.1990). "A State may also properly protect the judicial process from being misjudged in the minds of the public." *Cox, supra* 379 U.S. at 565, 85 S.Ct. at 481, 13 L.Ed.2d at 493. *See also Stretton, supra.* This interest extends to properly conducted judicial elections as the perception of judicial partiality and corruption which can arise from improperly run judicial campaigns whether true or not, breeds disrespect for the law and ultimately encourages extralegal self-help. *Buckley v. Illinois Judicial Inquiry Bd.,* 801 F.Supp. 83, 93 (N.D.Ill.1992).

---

**8.** It is professional misconduct for a lawyer to: (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]

**9.** It is professional misconduct for a lawyer to: (d) engage in conduct that is prejudicial to the administration of justice[.]

**10.** A lawyer shall not knowingly: (1) make a false statement of material fact or law to a tribunal.

"The state's interest in ensuring that judges be and appear to be neither antagonistic nor beholden to any interest, party or person is entitled to the greatest respect." *Morial v. Judiciary Com'n of State of La.,* 565 F.2d 295, 302 (5th Cir.1977).

> A lawyer may engage in political activity and speak as freely as any other citizen. But in a contest between lawyers for a judicial office, a lawyer under his oath and the duties imposed upon him by law has an added responsibility and should seek to maintain a higher standard of conduct than can be expected of one who is not a member of a privileged and a responsible profession.

*Gorsuch, supra,* 75 N.W.2d at 648–9. "The right of free speech does not 'give a lawyer the right to openly denigrate the court in the eyes of the public.'" *Lacey, supra* at 252.[11]

Hopewell's argument he was unaware of the specifics of the Rules and Canons is unacceptable. They are contained in the South Dakota Codified Laws, a set of which he presumably owns. He was sent a copy of the Canons by the State Bar on July 16, 1990. He must have had some familiarity with them as he heartily denounced them at the August 26, 1990 NAACP picnic. In any event, every citizen is legally held to know the law. *Sioux Falls School Dist. v. S.D. Subsequent Injury Fund,* 504 N.W.2d 107 (S.D.1993). Obviously no less a standard should be required of an attorney who is presumed to be learned in the law.

"The power which the people of this state have entrusted to a circuit court judge affects the people's lives, welfare and property to no small extent." *Cummings v. Mickelson,* 495 N.W.2d 493, 496 (S.D.1993). *See also,* Henderson, J. dissenting 495 N.W.2d at 507 and Sabers, J. dissenting 495 N.W.2d at 511. Hopewell's "win at all costs" philosophy was widely reported in the Second Circuit and throughout the state. It could have made a mockery out of what should have been a serious choice by an electorate on a most important decision. Judicial campaigns are not verbal free fire zones, with no rules or laws, save only the law of the jungle. Any candidate for judicial office, incumbent or challenger, who engages in this type of conduct, may find their judicial career involuntarily concluded and their attorney's license in jeopardy. As has been demonstrated in prior cases, in appropriate circumstances this Court is prepared to set aside its normal timetables and act as expeditiously as necessary.

This was not an isolated incident where the emotions of the moment in the heat of a campaign got the better of Hopewell's normal judgment. The worst of it was written in advance. Further, Hopewell simply could not let it be. The unprofessional attacks against his opponent continued up to the time of the election.

Hopewell argues that he has already received a de facto public censure by the uncomplimentary articles printed in the *Argus Leader* concerning his conduct during the campaign. Even if this were the case, under Art. V, § 12 of our Constitution, this Court, and not the media nor any third party is solely charged with the responsibility for determining what is appropriate discipline in an attorney misconduct case. *Russell, supra.*

On the other hand, Hopewell has now recognized he has committed misconduct, has apologized to this Court, to Judge Kean and Judge Martin. He assures us this will never happen again. *Gorsuch, supra,* 75 N.W.2d at 649–50; *Lacey, supra* at 253. However the effect of this apology at oral argument was greatly diminished by Hopewell's explanation that a major reason for his regret was the three years of unpleasantness it had caused him personally rather than solely focusing on the problems he had created for Judge Kean, Judge Martin and the damage he had done to the legal system in this state.

Justice Henderson spoke for the Court when he stated at oral argument that based on Hopewell's prior conduct, the record in this case and Hopewell's appearance before the Court, there is justifiable concern over

---

11. Hopewell initially sought to defend his conduct on the purported grounds of freedom of speech protection guaranteed by the First Amendment. He abandoned that defense both before the Referee and this Court. Thus, we do not address it. We would note that the general nature of First Amendment protection has been set forth in *Gorsuch* and *Lacey.*

Hopewell's state of health both for protection of the public and Hopewell as an individual.

### 6. Discipline Imposed Upon Hopewell

Our options concerning discipline are set forth in SDCL 16–19–35. They are public censure, placement on probationary status, suspension for up to three years and disbarment.

This Court is not bound by the recommendations of the Board or Referee, nor need we give them deference. *Discipline of Martin*, 506 N.W.2d 101, 103 (S.D. 1993). We find the recommendation of the Board and the Referee to be too lenient in this case. Hopewell is suspended from the practice of law in all of the courts of the State of South Dakota until such time as he complies with the following requirements:

1. Hopewell shall successfully pass the Multi–State Professional Responsibility Examination.

2. Hopewell shall obtain an updated psychiatric examination from a licensed psychiatrist approved by this Court concerning his mental health and his fitness to practice law in South Dakota.

3. Any reinstatement pursuant to SDCL 16–19–84 is contingent upon a favorable report from this psychiatric examination and Hopewell's agreement to follow any recommendations from this examination.

4. This Court reserves the right to add additional conditions for reinstatement based on the results of this examination.

5. Hopewell is given thirty days (30) days to wind up business pursuant to SDCL 16–19–77.

6. Hopewell must comply with the notice provisions of SDCL 16–19–78 to 80.

7. Hopewell shall pay all costs of this proceeding.

8. Hopewell shall pay all costs of reinstatement proceedings under SDCL 16–19–84 and those incurred in meeting requirements for restatement as set forth in this opinion. *Matter of the Discipline of Bergren*, 455 N.W.2d 856 (S.D.1990), *Russell, supra* at 717.

MILLER, C.J., and HENDERSON and SABERS, JJ., concur.

WUEST, J., concurs in part and dissents in part.

GILBERTSON, Circuit Judge, for AMUNDSON, J., disqualified.

WUEST, Justice (concurring in part and dissenting in part).

I concur in the majority opinion except as to the discipline. We do not have any competent evidence before this court justifying the ordering of a psychiatric examination. I would follow the recommendations of the disciplinary board and referee.