2004 SD 83

**In the Matter of the Discipline
of Al ARENDT as an
Attorney at Law.**

No. 23288.

Supreme Court of South Dakota.

Considered on June 24, 2004.

Decided June 30, 2004.

Robert B. Frieberg, Beresford, South Dakota, Attorney for Disciplinary Board.

Scott N. Heidepriem, Johnson, Heidepriem, Miner, Marlow & Janklow, L.L.P., Sioux Falls, South Dakota, Attorney for Al Arendt.

PER CURIAM.

[¶ 1.] The Disciplinary Board of the State Bar of South Dakota filed a formal accusation against attorney Al Arendt pursuant to SDCL 16–19–67. The Board recommended that Arendt be suspended from the practice of law in the courts of South Dakota for a period of 120 days. Arendt admitted the allegations of the formal accusation and agreed to the sanction pursuant to SDCL 16–19–68. We conclude that suspension from the practice of law for a period of 120 days is an appropriate sanction.

[¶ 2.] Arendt graduated from law school in 1978. Upon his admission to the bar, he practiced law in Timber Lake for about seven years. Arendt then moved to Pierre, where he has been continuously engaged in private practice.

[¶ 3.] In early 2002, Arendt represented Steve Wellner and his wife in a real estate matter. Wellner had entered into an agreement to purchase a quarter section of land at a specific price. However, Wellner was unable to raise the funds necessary to execute the right to purchase, and he asked Arendt for assistance.

[¶ 4.] Arendt offered to create a joint venture. Arendt and his wife proposed to provide Wellner and his wife with the money necessary to purchase the real estate. The ultimate intent of the parties was to sell the property.

[¶ 5.] Before the joint venture agreement was to be executed, Arendt provided Wellner with a copy of Rule 1.8 of the Rules of Professional Conduct, which provides in relevant part:

(a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client;

(2) the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel on the transaction; and

(3) the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.

In drafting the joint venture agreement, Arendt also included a provision setting out the advice required by Rule 1.8. However, the joint venture agreement was never executed because the parties could not agree on the manner in which the proceeds from the intended sale would be divided.

[¶ 6.] In the course of investigating the foregoing matter, the Disciplinary Board learned that in early 1995, Arendt had been retained by Wellner and Wellner's father, George, in connection with a mortgage foreclosure. At that time, George was indebted to the Farmers Home Administration (FHA), and the debt was secured by a mortgage on 560 acres of George's land.

[¶ 7.] At the time Arendt was retained, the foreclosure sale was pending. Arendt initiated a bankruptcy proceeding in order to stay the foreclosure sale, and he continued to represent George for several months during the bankruptcy. Arendt worked to resolve the matter in a way that would enable George to retain the property. Arendt negotiated an agreement with FHA that released the land from the judgment lien upon payment of the appraised value of the property.

[¶ 8.] Arendt then offered to provide the money to satisfy the FHA judgment, with the understanding that Steve Wellner, rather than George Wellner, would eventually purchase the land from Arendt. Arendt ultimately provided the funds, and title to the land was transferred to Arendt's spouse, who then entered into a contract for deed with Steve Wellner. The contract called for annual payments of principal and interest; however, Wellner did not make any payments. In 1999, the land was sold to a third party. At that time, Arendt was repaid his investment, plus some fees. The balance was retained by Steve Wellner.

[¶ 9.] In conducting its investigation, the Board decided to determine whether Arendt complied with the requirements of Rule 1.8 in the course of the 1995 transaction. In responding to the Board's inqui-

ry, Arendt submitted a document that purported to be a copy of an August 30, 1995 letter advising George Wellner of the requirements of Rule 1.8. This letter, however, was a fabrication. Arendt had created the letter in February 2004 and had delivered it to his counsel who unknowingly submitted it to the Board.

[¶ 10.] Upon examination, the Board observed that the letter was different in style from other documents prepared by Arendt in August 1995. Particularly, the type font and the letterhead were different. The Board informed Arendt's counsel of its concerns about the authenticity of the letter, and it asked that Arendt be prepared to address this issue when he appeared before the Board.

[¶ 11.] Arendt's counsel advised Arendt of the Board's concern, and Arendt admitted to his counsel that he created the letter in an effort to mislead the Board. Arendt's counsel promptly advised the Board that the document was false. Arendt also admitted that the letter was false in his testimony before the Board. He was also remorseful.

[¶ 12.] After a hearing, the Board made findings, conclusions, and recommendations regarding the appropriate discipline. "Because [the Board] had the advantage of seeing and hearing the witnesses, this Court gives careful, due consideration to their findings." *In re Discipline of Mattson*, 2002 SD 112, ¶ 38, 651 N.W.2d 278, 285 (citations omitted). Ultimately, however, "[t]he final determination for the appropriate discipline of a member of the State Bar rests firmly with the

wisdom of this Court." *Id.* (citation omitted).

## Analysis

[¶ 13.] Initially, we note that: [W]e must thoroughly examine the merits of this case, as well as the overall propriety of what our decision would mean to the South Dakota Bar and the public at large. [W]e first reaffirm the purpose of the disciplinary process—to protect the public, not to punish the lawyer. A further purpose of the disciplinary process is the deterrence of like conduct by other attorneys.

*In re Discipline of Eicher*, 2003 SD 40, ¶ 24, 661 N.W.2d 354, 363 (internal citations omitted).

[¶ 14.] The Disciplinary Board concluded that Arendt violated SDCL 16–18–26(1), which provides: "Every attorney at law who ... [p]ractices any deceit or collusion, or consents to the same with intent to deceive the court or any party; ... is guilty of a Class 2 misdemeanor." Moreover, the Board concluded that Arendt violated SDCL 16–18–19 concerning an attorney's obligation to use only truthful means. That statute provides:

It is the duty of an attorney and counselor at law to employ, for the purpose of maintaining the causes confided to him, such means only as are consistent with truth, and never to seek to mislead the judges by any artifice or false statement of fact or law.

Finally, the Board concluded that Arendt violated Rule 3.3 concerning candor toward the tribunal and Rule 8.4(a), (b), (c), and (d) concerning professional misconduct.*

---

\* Rule 3.3 provides:
    (a) A lawyer shall not knowingly:
    (1) make a false statement of fact or law to a tribunal or fail to timely correct a false statement of material fact or law previously made to the tribunal by the lawyer;

    (2) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or

Arendt admitted these accusations pursuant to SDCL 16–19–68, and indicated that he was prepared to accept the recommended discipline without notice or hearing.

[¶ 15.] We have previously stated that "[t]he foundation of an attorney's relationship with clients and the legal system is trust." *Mattson*, 2002 SD 112, ¶ 55, 651 N.W.2d at 289 (citation omitted). Arendt's action in deliberately misleading the Board was not only a violation of statute and of the Rules of Professional Conduct, it was also a violation of that trust. After reviewing the record, we agree with the Board that Arendt's conduct was of such serious professional nature that, in the best interests of the public and legal profession, it warrants a suspension from the practice of law.

[¶ 16.] We concur with the Board's recommendation. Therefore, pursuant to SDCL 16–19–35(2), a judgment of suspension will be entered for a period of 120 days, effective August 1, 2004. Furthermore, Arendt must submit an affidavit to this Court stating under oath that:

1. He has reviewed the Rules of Professional Conduct;
2. Upon reinstatement, he will maintain professional malpractice insurance along with proof thereof;
3. He recognizes fully that his conduct violated the Rules of Professional Conduct by which he is bound;
4. He pledges he will devote every effort in his future practice to fully abide by the South Dakota Rules of Professional Conduct; and
5. He is to fully comply with the requirements of a suspended attorney found in SDCL 16–19–78 and 79.

Arendt is also required to take and pass the Multistate Professional Responsibility Examination prior to any application for reinstatement. Upon expiration of his suspension, Arendt may file his petition for reinstatement pursuant to SDCL 16–19–84 to SDCL 16–19–87. Finally, Arendt shall reimburse the State Bar of South Dakota

(3) offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall timely take reasonable remedial measures, including, if necessary, disclosure to the tribunal. A lawyer may refuse to offer evidence, other than the testimony of a defendant in a criminal matter, that the lawyer reasonably believes is false. However, in a criminal matter, the lawyer shall not participate with the client in the presentation of the client's testimony which the lawyer knows to be false.
(b) A lawyer who represents a client in an adjudicative proceeding and who knows that a person intends to engage, is engaging or has engaged in criminal or fraudulent conduct related to the proceeding shall timely take reasonable remedial measures, including, if necessary, disclosure to the tribunal.
(c) The duties stated in paragraphs (a) and (b) continue to the conclusion of the proceeding, and apply even if compliance requires disclosure of information otherwise protected by Rule 1.6.
(d) In an ex parte proceeding, except grand juries and applications for search warrants, a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse.

Rule 8.4 provides in relevant part:
It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the rules of professional conduct, knowingly assist or induce another to do so, or do so through the acts of another;
(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice[.]

and the Unified Judicial System expenses allowed under SDCL 16–19–70.2.

[¶ 17.]   SABERS, Acting Chief Justice, and KONENKAMP, ZINTER and MEIERHENRY, Justices, participating.

[¶ 18.]   GILBERTSON, Chief Justice, deeming himself disqualified, did not participate.