#23724, SEVERSON, Presiding Circuit Judge
**2006 SD 3**

IN THE SUPREME COURT

OF THE

STATE OF SOUTH DAKOTA

* * * *

IN THE MATTER OF THE
DISCIPLINE OF WILLIAM J. JANKLOW
AS AN ATTORNEY AT LAW

* * * *

ORIGINAL PROCEEDING

* * * *

| | |
|---|---|
| ROBERT B. FRIEBERG<br>Beresford, South Dakota | Attorney for the<br>Disciplinary Board. |
| BRENT A. WILBUR of<br>May, Adam, Gerdes & Thompson<br>Pierre, South Dakota | Attorneys for<br>William J. Janklow |

* * * *

ARGUED 10/14/05

OPINION FILED 01/04/06

#23724

SEVERSON, Presiding Circuit Judge

[¶1.]    This is a disciplinary proceeding against William J. Janklow (Janklow), a member of the State Bar of South Dakota.  The Disciplinary Board of the State Bar of South Dakota (Disciplinary Board) has recommended that Janklow be suspended from the practice of law for a total of twenty-six months from December 15, 2003, and that he be reinstated without further proceedings on February 15, 2006, subject to conditions.

[¶2.]    We find that a twenty-six month suspension of Janklow's license to practice law, together with the recommended conditions upon reinstatement, is appropriate.

## FACTUAL AND PROCEDURAL BACKGROUND

[¶3.]    Janklow graduated from the University of South Dakota School of Law in 1966 and was admitted to the practice of law.  He began his legal career as director of the legal aid program at Mission, South Dakota where he worked for approximately six years representing indigent clients.  He then practiced in Pierre, South Dakota for approximately two years.  Janklow served as Attorney General of South Dakota from 1975 to 1979 and served as Governor of South Dakota from 1979 to 1987 and from 1995 to 2003.  Between his terms as Governor, Janklow spent approximately eight years in private practice in Sioux Falls, South Dakota. Janklow was elected to the United States House of Representatives in November 2002 and was serving in that capacity at the time of the events leading to this disciplinary action.

[¶4.]    On December 8, 2003, a Moody County jury convicted Janklow of failure to stop at a stop sign, speeding, reckless driving and second degree

manslaughter. The charges arose from an August 16, 2003, collision which killed Randolph Scott. A detailed statement of the criminal case can be found in State v. Janklow, 2005 SD 25, 693 NW2d 685. Trial evidence documented numerous speeding incidents and other traffic violations. On December 9, 2003, Janklow reported the felony conviction to this Court. As provided by SDCL 16-19-37, Janklow's license to practice law was suspended on December 15, 2003, pending formal disciplinary proceedings pursuant to SDCL 16-19-39.

[¶5.] The trial court sentenced Janklow on January 22, 2004. Pursuant to SDCL 23A-27-13, the trial court granted a suspended imposition of sentence on the second degree manslaughter charge. Under the terms of the suspended imposition of sentence, Janklow was placed on probation for a period of three years under certain conditions, including that he serve one hundred days in the Minnehaha County Jail, that he pay a fine of $5,000, and that he not drive a motor vehicle during the period of his probation. Janklow appealed and his convictions were affirmed in *Janklow*, 2005 SD 25, 693 NW2d 685.

[¶6.] The Disciplinary Board held a hearing on this matter on June 13, 2005, and filed its findings of fact, conclusions of law and recommendation with this Court on August 1, 2005. Janklow did not object and a referee was not appointed. The Disciplinary Board recommended that Janklow be suspended from the practice of law for a total of twenty-six months commencing December 15, 2003, with reinstatement without further proceedings on February 15, 2006, subject to the following conditions:

> (a) That he fully comply with all terms and conditions of his probation.
>
> (b) That he promptly advise the Secretary of the Disciplinary Board of any violation of his probation, and the Disciplinary Board make a determination of whether to recommend [Janklow's] license be again suspended or other discipline imposed.
>
> (c) That for a period of two years after his probation is complete, [Janklow] promptly report to the Secretary of the Disciplinary Board any moving violations of traffic laws, and the Disciplinary Board make a determination of whether to recommend [Janklow's] license be again suspended or other discipline imposed.

## STANDARD OF REVIEW

[¶7.] "This Court gives careful, due consideration to the Disciplinary Board's findings of fact because it had the advantage of encountering the witness first hand." In re Discipline of Ortner, 2005 SD 83, ¶26, 699 NW2d 865, 874 (citing In re Arendt, 2004 SD 83, ¶12, 684 NW2d 79, 81). However, this Court does not defer to a recommended sanction. *Discipline of Ortner,* 2005 SD 83, ¶26, 699 NW2d at 874 (citing In re Discipline of Laprath, 2003 SD 114, ¶41, 670 NW2d 41, 55). "'The final determination for the appropriate discipline of a member of the State Bar rests firmly with the wisdom of this Court.'" *Discipline of Ortner*, 2005 SD 83, ¶26, 699 NW2d at 874 (quoting Matter of Discipline of Wehde, 517 NW2d 132, 133 (SD 1994)).

## LEGAL ANALYSIS

[¶8.]        Article V, Section 12 of the South Dakota Constitution places an affirmative duty on this Court to "govern terms of courts, admission to the bar, and discipline of members of the bar." SDCL 16-19-31 further defines this Court's constitutional regulatory relationship with the State Bar:

> The license to practice law in this state is a continuing proclamation by the Supreme Court that the holder is fit to be entrusted with professional and judicial matters, and to aid in the administration of justice as an attorney and as an officer of the court. It is the duty of every recipient of that privilege to conduct himself at all times, both professionally and personally, in conformity with the standards imposed upon members of the bar as conditions for the privilege to practice law.

SDCL 16-19-37 provides, in pertinent part:

> If any attorney has been convicted of a serious crime as defined in § 16-19-36, the Supreme Court shall enter an order immediately suspending the attorney, whether the conviction resulted from a plea of guilty or nolo contendere or from a verdict after trial or otherwise, and regardless of the pendency of an appeal, pending final disposition of a disciplinary proceeding to be commenced upon such conviction.

[¶9.]        A "serious crime" is defined as:

> any felony and any lesser crime a necessary element of which, as determined by the statutory or common law definition of such crime, involves improper conduct as an attorney, interference with the administration of justice, false swearing, misrepresentation, fraud, willful failure to file income tax returns, deceit, bribery, extortion, misappropriation, theft, or an attempt or a conspiracy or solicitation of another to commit a serious crime.

SDCL 16-19-36. Janklow was convicted of second degree manslaughter, a Class 4 felony which is a "serious crime" under SDCL 16-19-36. Under the provisions of

SDCL 16-19-39, the sole issue to be determined is the extent of the final discipline to be imposed.

[¶10.] The disciplinary options available to this Court include private reprimand, public censure, placement on probationary status, suspension for up to three years and disbarment. SDCL 16-19-35. "The appropriate discipline in a particular case is determined by considering the seriousness of the misconduct, the likelihood that it or similar misconduct will be repeated, and the attorney's prior record." *Discipline of Ortner*, 2005 SD 83, ¶36, 699 NW2d at 877 (citing In re Discipline of Eicher, 2003 SD 40, ¶47, 661 NW2d 354, 369). [1]

---

1.  While some states make a felony conviction grounds for automatic disbarment, this approach to attorney discipline has not been adopted in South Dakota. In re Discipline of Parker, 269 NW2d 779, 780 (SD 1978).

    > To determine whether discipline other than disbarment would be appropriate, the circumstances surrounding the conviction will be considered, i.e., whether the conduct involved dishonesty, fraud, deceit, or misrepresentation; whether the conduct is prejudicial to the administration of justice; whether the conduct adversely reflects upon the attorney's integrity, competency or fitness to practice law.

    *Id.*

    > As officers of this court, attorneys are charged with obedience of the laws of this state and the United States. The *intentional* violation of those laws by those who are specially trained and knowledgeable of them is particularly unwarranted and constitutes a breach of the attorney's oath of office. Because of his position in society, even minor violations of law by a lawyer tend to lessen public confidence in the legal profession. Obedience of the law exemplifies respect for the law. To lawyers especially, respect for the law must be more than a platitude.

*Goals of Disciplinary Proceeding*

[¶11.]       The two goals of disciplinary proceedings are: "1) the protection of the public from further fraudulent, unethical or incompetent activities involving this attorney; and 2) the preservation of the image and integrity of the attorneys, the bar association and the legal profession as a whole." Matter of Discipline of Simpson, 467 NW2d 921, 921-22 (SD 1991). "The real and vital issue to be determined is whether or not the accused, from the whole evidence as submitted, is a fit and proper person to be permitted to continue in the practice of law." *Id.* at 922.

*I. Protection of Public*

[¶12.]       The first and primary goal of attorney discipline is to protect the public from further fraudulent, unethical or incompetent activities. This Court does not look only at the conviction, but must consider the circumstances surrounding the conviction. Janklow was convicted of second degree manslaughter which is defined as "[a]ny reckless killing of one human being, including an unborn child, by the act or procurement of another which, under the provisions of this chapter, is neither murder nor manslaughter in the first degree, nor excusable nor justifiable homicide[.]" SDCL 22-16-20. The jury found that Janklow acted recklessly when it convicted him of second degree manslaughter. He was not charged with or convicted of a felony involving an intentional act. The distinction is significant. "Reckless is a lesser degree of culpability or mental state than intentional." State v.

---

Matter of Discipline of Jeffries, 500 NW2d 220, 222 (SD 1993) (quoting *In re Discipline of Parker*, 269 NW2d at 780) (emphasis added).

Giroux, 2004 SD 24, ¶14, 676 NW2d 139, 144. This Court has previously identified several categories of attorney conduct which warrant disbarment. *Discipline of Jeffries*, 500 NW2d at 223. "The first and historically the most important, is 'when it is clear that the protection of society requires such action[.]'" *Id.* (citation omitted) (alteration in original). Generally, it is appropriate to disbar attorneys who are convicted of a serious crime as defined by SDCL 16-19-36 which results in harm to clients or others. *Id.* Often these felony convictions are for crimes involving moral turpitude. *Id.* "To summarize, attorney conduct involving moral turpitude and/or dishonesty, fraud, deceit or misrepresentation, which harms, or is likely to harm the public, usually warrants disbarring the attorney involved." *Id.* at 224.

[¶13.]       This case is distinguishable from those attorney discipline cases involving fraud, dishonesty, deceit or misrepresentation and those cases involving harm to clients. It is also distinguishable from cases involving the use of drugs and alcohol. Janklow's felony conviction is unrelated to the practice of law. While there are public concerns regarding Janklow's driving, there was no evidence presented to suggest that the public needs protection from Janklow's conduct as an attorney. Janklow has a long and distinguished career as an attorney. He is widely regarded as a skilled lawyer. There is no evidence to suggest that he would be a threat to his clients or to the public if allowed to return to the practice of law.

*II. Integrity of Attorneys, Bar Association and Legal Profession as a Whole*

[¶14.]       This Court must also consider the second goal of attorney discipline, the preservation of the image and integrity of attorneys, the bar association and the

legal profession. Janklow's actions resulted in the death of another human being. We must consider a lawyer's responsibility as an officer of the Court to obey laws. In return for their license to practice law, lawyers hold positions of special responsibility to their clients and the public. They must take an oath to support the Constitution of the United States and the Constitution of the State of South Dakota. Violations of the law by lawyers undermine public trust and confidence in the rule of law. This must be a component of our evaluation as we consider the appropriate discipline.

[¶15.] Janklow's criminal case received extensive media coverage and led to his resignation from the United States House of Representatives. Janklow has expressed remorse and while the conviction has had personal and professional consequences, "[p]ublicity and personal grief are not factors in deciding appropriate discipline." *Discipline of Ortner,* 2005 SD 83, ¶39, 699 NW2d at 877. "Under art. V, §12 of our Constitution, this Court, and not the media nor any third party, is solely charged with the responsibility for determining what is appropriate discipline in any attorney misconduct case." *Id.* (citations omitted). Appropriate discipline is also not a partisan issue to be influenced by political supporters or opponents.

[¶16.] "The purpose of a criminal prosecution is to punish a crime against the State." In re Discipline of Wilka, 2001 SD 148, ¶17, 638 NW2d 245, 250. "Punishment for any criminal activity is handled in sentencing[.]" *Discipline of Simpson,* 467 NW2d at 922. "The purpose of attorney disciplinary proceedings is not to punish the attorney anew, but rather to take sufficient measures for the protection of the public and its legal system from a repetition of these types of

incidents."  *Discipline of Wilka*, 2001 SD 148, ¶17, 638 NW2d at 250 (citing Matter

of Discipline of Hopewell, 507 NW2d 911, 916 (SD 1993)).  "[A]n attorney is and

should be held to a higher standard than the general public and the profession is

entitled to know that there is a consequence when that standard is not met."

*Discipline of Simpson,* 467 NW2d at 923.

Appropriate Discipline

[¶17.]        In this case, conviction of a serious crime warrants sanctions as it

reflects on the public trust placed on attorneys.  However, we must also consider

that Janklow's conviction did not involve an intentional act and was unrelated to

the practice of law.  A lawyer must be held accountable for his or her acts, even if

the results were unintended, but we must not be unfair to the lawyer.

[¶18.]        In determining the appropriate level of discipline, we have applied

South Dakota law and reviewed South Dakota cases which have addressed similar

legal principles.[2]  We have also considered disciplinary actions involving

manslaughter convictions from other states as there is no similar case in South

Dakota.[3]  Although not adopted in South Dakota, we also have reviewed for

---

2.      *See Discipline of Simpson*, 467 NW2d at 923 (attorney received a suspended imposition of sentence for failing to file federal income tax return and South Dakota sales tax returns from 1965 through 1988 and was suspended from the practice of law for two years); *Discipline of Jeffries*, 500 NW2d at 226-27 (prosecutor's commission of felony and misdemeanor drug offenses warranted three year suspension from the practice of law).

3.      *See* In re Alkow, 415 P2d 800 (Cal 1966) (imposing a six month suspension for a manslaughter conviction which occurred after twenty traffic violations, at least eleven of which were for driving without a license); People v. Fahselt, 807 P2d 586 (Colo 1991) (holding that convictions for felony vehicular assault, misdemeanor driving under the influence of alcohol, failure to

guidance the potential aggravating and mitigating factors of the ABA Standards for Imposing Lawyer Sanctions. *See Discipline of Laprath*, 2003 SD 114, ¶86 n 4, 670 NW2d at 66 n 4. The facts and circumstances of this attorney disciplinary action warrant suspension for twenty-six months. This sanction is consistent with South Dakota cases addressing the issue of conduct reflecting a disregard for the rule of law which undermines public confidence in the law. It is also consistent with sanctions in other states where misconduct resulted in manslaughter or vehicular homicide convictions.

[¶19.]    Therefore, this Court will accept the recommendations of the Disciplinary Board of the State Bar and Janklow will be suspended from the practice of law retroactive to December 15, 2003, and he will be reinstated on February 15, 2006, without further proceedings, subject to the conditions

---

maintain liability insurance and reckless driving warranted public censure); In re Steiner, 817 A2d 793 (Del 2003) (holding that three year suspension was appropriate for conviction for two counts of misdemeanor second-degree vehicular assault and one count of misdemeanor driving while under the influence); In re Morris, 397 P2d 475 (NM 1965) (ordering indefinite suspension based on conviction of involuntary manslaughter resulting from driving while under the influence of alcohol); Office of Disciplinary Counsel v. Michaels, 527 NE2d 299 (Ohio 1988) (holding that convictions for involuntary manslaughter, driving while intoxicated, reckless operation and operating a motor vehicle without reasonable control warranted an eighteen month suspension); State ex rel Oklahoma Bar Ass'n v. Wyatt, 32 P3d 858 (Okla 2001) (holding that disbarment was appropriate for conviction of first degree manslaughter involving driving while intoxicated); Office of Disciplinary Counsel v. Patchel, 653 A2d 625 (PA 1995) (holding that a four year suspension was appropriate for conviction of two counts of homicide by vehicle and two counts of accident involving death or personal injury hit and run); In re Disciplinary Proceeding Against Curran, 801 P2d 962 (Wash 1990) (imposing a six month suspension in addition to an eighteen month interim suspension period for driving while intoxicated resulting in two vehicular homicide warrants).

recommended by the Disciplinary Board. Further, Janklow must also reimburse the State Bar of South Dakota and the Unified Judicial System for expenses allowed under SDCL 16-19-70.2.

[¶20.] CALDWELL, BASTIAN and VON WALD, Circuit Judges, concur.

[¶21.] RUSCH, Circuit Judge, dissents.

[¶22.] SEVERSON, Presiding Circuit Judge, and CALDWELL, BASTIAN, RUSCH and VON WALD, Circuit Judges, sitting for GILBERTSON, Chief Justice, SABERS, KONENKAMP, ZINTER and MEIERHENRY, Justices, disqualified.

RUSCH, Circuit Judge (dissenting)

[¶23.] I respectfully dissent. Janklow's license to practice law should not be returned until he has satisfactorily completed the three-year period of probation ordered by the circuit court in Moody County for the criminal offenses of failure to stop at a stop sign, speeding, reckless driving, and second degree manslaughter.

[¶24.] It is important to recognize that these disciplinary proceedings are not part of Janklow's punishment for those convictions. The trial court in Moody County had the right and obligation to impose an appropriate punishment for Janklow's criminal offenses which resulted in the death of Randolph Scott. "The purpose of this [disciplinary] action is not to give a punishment. Punishment for any criminal activity is handled in sentencing [.]" *Discipline of Simpson*, 467 NW2d at 922. *See also* Petition of Pier, 1997 SD 23, ¶8, 561 NW2d 297, 299 (*citing Discipline of Simpson, supra*; Matter of Discipline of Stanton, 446 NW2d 33, 42 (SD 1989); Matter of Discipline of Strange, 366 NW2d 495, 497 (SD 1985)).

> The purpose of a criminal prosecution is to punish a crime against the State. The purpose of civil contempt is to punish the wrongdoer. The purpose of attorney disciplinary proceedings is not to punish the attorney anew, but rather to take sufficient measures for the protection of the public and its legal system from a repetition of these types of incidents.

*Discipline of Wilka*, 2001 SD 148, ¶17, 638 NW2d at 250 (*citing Discipline of Hopewell*, 507 NW2d at 917). As pointed out by the majority in footnote one, some states require automatic disbarment of a lawyer convicted of a felony, but South Dakota has not adopted such a rule.

[¶25.] The majority opinion correctly states the standard of review and the purposes of disciplinary proceedings. The goals of a lawyer's disciplinary proceeding should be: 1) the protection of the public from further fraudulent, unethical, or incompetent activities involving the attorney; and 2) the preservation of the image and integrity of attorneys, the bar association and the legal profession as a whole. While I agree with the majority's consideration of the first goal, the Court should reach a different result when it considers the second goal.

*Protection of the public*

[¶26.] The Court is correct in finding that Janklow does not present a risk of harm to the public from fraudulent, unethical, or incompetent activities. Janklow's case is clearly different from those attorney discipline cases involving fraud, dishonesty, deceit, or misrepresentation and from those cases involving harm to clients. His criminal convictions were unrelated to the practice of law. While the public may be concerned about Janklow's driving, there is no reason to believe that the public needs protection from his conduct as an attorney. Janklow has had a

long and distinguished career as an attorney. The record before this court was full of examples of people he has helped and the good he has done as an attorney. There is no evidence to suggest that Janklow is a threat to the public if he is allowed to return to the practice of law.

*Preservation of the image and integrity of the legal profession*

[¶27.] I disagree with the result reached by the majority because of the second goal, *i.e.* the need to preserve the image and integrity of attorneys, the bar association, and the legal profession as a whole. "Lawyers must guard against conduct that diminishes public confidence in the legal system." *Discipline of Ortner*, 2005 SD 83, ¶48, 699 NW2d at 879. "If an attorney knowingly and repeatedly violates the law, he places his license to practice in jeopardy and his actions result in a loss of respect for the profession from the public." Matter of Discipline of Johnson, 488 NW2d 682, 684 (SD 1992), *vacated on rehearing,* 500 NW2d 215 (SD 1993).

> As officers of this court, attorneys are charged with obedience of the laws of this state and the United States. The intentional violation of those laws by those who are specially trained and knowledgeable of them is particularly unwarranted and constitutes a breach of the attorney's oath of office. Because of his position in society, even minor violations of law by a lawyer tend to lessen public confidence in the legal profession. Obedience of the law exemplifies respect for the law. To lawyers especially, respect for the law must be more than a platitude.

*Discipline of Jeffries*, 500 NW2d at 222 (quoting *Discipline of Parker*, 269 NW2d at 780).

[¶28.] There are no South Dakota cases dealing with the appropriate discipline for an attorney convicted of manslaughter or a similar offense. However, as pointed out by the Court in footnote three, there are similar cases in other states. Most of those cases involved DWI convictions. A DWI is an aggravating circumstance which was not present in this case as Janklow had not been drinking. In those cases, Colorado only imposed a public censure (there was a DWI ); California imposed a six-month suspension (no DWI but twenty previous traffic violations); Ohio imposed an eighteen month suspension (a DWI); Washington imposed a twenty-four month suspension (a DWI and two deaths); Delaware imposed a three-year suspension (a DWI); Pennsylvania imposed a four-year suspension (two deaths as a result of a hit and run); New Mexico imposed an indefinite suspension (a DWI); and Oklahoma disbarred the attorney (a DWI). A review of South Dakota attorney discipline cases over the past fifteen years shows very few cases involved suspensions for as long as three years.[4] The cases which

---

4. *See Discipline of Ortner, supra* (nine month suspension); *Discipline of Arendt, supra* (one hundred twenty day suspension); In re Reciprocal Discipline of Rokahr, 2004 SD 66, 681 NW2d 100 (public admonishment); *Discipline of Laprath, supra* (disbarment); *Discipline of Eicher, supra* (one hundred day suspension); In re Discipline of Mattson, 2002 SD 112, 651 NW2d 278 (two year suspension); *Discipline of Wilka, supra* (public censure); In re Discipline of Light, 2000 SD 100, 615 NW2d 164 (public censure); In re Discipline of Mines, 2000 SD 89, 612 NW2d 619 (disbarment); In re Discipline of Dorothy, 2000 SD 23, 605 NW2d 493 (public censure); Matter of Claggett, 1996 SD 21, 544 NW2d 878 (public censure); Matter of Discipline of Olson, 537 NW2d 370 (SD 1995) (three year suspension); Matter of Discipline of Mines, 523 NW2d 424 (SD 1994) (public censure); *Discipline of Wehde, supra* (two year suspension); Matter of Bihlmeyer, 515 NW2d 236 (SD 1994) (public censure); *Discipline of Hopewell, supra* (indefinite suspension); Matter of Discipline of Martin, 506 NW2d 101 (SD 1993) (two year suspension); Matter of Discipline of Tidball, 503 NW2d 850 (SD 1993) (three year suspension); Matter of

resulted in disbarment generally involved fraudulent or unethical conduct which seriously harmed clients.

[¶29.]	Janklow's case is different because he is the most well-known attorney in the State of South Dakota as a result of his service as Attorney General from 1975 to 1979, as Governor from 1979 to 1987 and from 1995 to 2003, and as a member of the United States House of Representatives from 2004 until his resignation following the events leading to this disciplinary action. Because of his prominence, his arrest and convictions have caused more harm to the public image and view of the integrity of attorneys, the bar association, and the legal profession than similar conduct by a lawyer of lesser renown. The Supreme Court has considered an attorney's public position as indicating the need for more severe sanctions. *See Discipline of Johnson,* 488 NW2d 682, *vacated on rehearing,* 500 NW2d 215; Discipline of Jeffries, 488 NW2d 674 (SD 1992), *vacated on rehearing,* 500 NW2d 220. Janklow's acknowledged violations of the traffic laws and these convictions, while he was an elected public official, have tarnished the image and integrity of the legal profession as a whole.

---

Discipline of Johnson, 500 NW2d 215 (SD 1993) (two year suspension); *Discipline of Jeffries, supra* (three year suspension); Matter of Discipline of Taylor, 498 NW2d 200 (SD 1993) (public censure); Matter of Discipline of Russell, 493 NW2d 715 (SD 1992) (one year suspension); Matter of Discipline of Kallenberger, 493 NW2d 709 (SD 1992) (public censure); Matter of Discipline of Schmidt, 491 NW2d 754 (SD 1992) (public censure); *Petition of Pier, supra* (disbarment); *Discipline of Simpson, supra* (two year suspension); Matter of Discipline of Bleeker, 466 NW2d 858 (SD 1991) (six month suspension); Matter of Discipline of Hendrickson, 456 NW2d 140 (SD 1990)(disbarment); Matter of Discipline of Bergren, 455 NW2d 856 (SD 1990)(one year suspension).

[¶30.]    A delay in the return of Janklow's license to practice law until he has completed his probation may result in the loss of his license for a period of time longer than similarly situated lawyers.  As pointed out above, very few South Dakota cases have involved suspensions for as long as three years.  However, none of the lawyers involved in those disciplinary cases were as prominent as Janklow.  Because of his public positions, Janklow's violations of the law did more to lessen respect for the law and public confidence in the legal profession.  This justifies dealing with him more harshly than others were dealt with.  Janklow's license to practice law should not be returned until he has completed his period of probation.