## In re RAMSEY.

An attorney received a note for collection from a nonresident client, brought suit on it, and agreed with defendant not to take judgment without notice, but subsequently took judgment when he had substantially collected the note. At the attorney's suggestion, his client assigned the judgment for about one-fourth of its amount to the attorney's sister-in-law, the client being ignorant of the payments and the relations of the assignee to him, and the attorney subsequently caused land to be sold in satisfaction of the judgment. **Held,** that under Pol. Cole, § 698, providing that an attorney who is guilty of deceit or collusion, with intent to deceive a party to an action or proceedings, is liable to be disbarred, the conduct of the attorney was ground for disbarment.

The relation of attorney and client is one of the highest trust and confidence, requiring the attorney to observe the utmost good faith toward his client, and not to allow his private interests to conflict with those of his client.

It is no defense to a proceeding for disbarment for violation of the attorney's duty to his client that the client has made no complaint, and may not have been injured, as under Pol. Code, § 685, the Supreme Court has the sole power to admit to practice, and under section 693 disbarment proceedings may be commenced by direction of the court, or that, the transaction having extended over a long period of time, the attorney may have forgotten certain payments to him which he did not report to his client, or that his wrongdoing is barred in six years, or that in all other respects he has been honorable and acted as attorney with fidelity to court and client.

(Opinion filed, Dec. 1, 1909.)

Disbarment proceedings were brought against Samuel A. Ramsey. Disbarment ordered.

*S. W. Clark, Atty. Gen.,* for accusers. *T. H. Null,* for accused.

HANEY, P. J.  The accusation in this proceeding was filed by the then Attorney General by direction of this court. It charges the accused with having violated the duties of an attorney and counselor at law, in that he was guilty of acts of deceit and collusion with intent to deceive a party to an action in a court of record in this state, and with intent to deceive a court and a judge of a court of record in this state; the facts relating to such charge being alleged substantially as follows: That the accused is a duly licensed attorney and counselor at law, entitled to practice in all the courts of this state; that on April 20, 1891, one E. S. Waterbury executed and delivered his promissory note to an Illinois corporation for $140, due November 1, 1891; that this note was delivered to the accused for collection; that on December 20, 1892, accused issued a summons in an action in the circuit court on such note and served the same upon the maker thereof; that accused then informed Waterbury that he would not take judgment in such action without further notice; that in April, 1896, accused applied to and procured from the circuit court, without further notice to the defendant, a judgment for $191.90, the full amount of the note with interest, not

withstanding the accused then knew that the nate was paid in full; that in November, 1900, accused caused this judgment to be entered in Sanborn county; that in December, 1903, he procured an assignment of the judgment to be executed to M. A. Stoner, his sister-in-law, for which he paid the Illinois corporation $50, the accused pretending to act as the agent of M. A. Stoner, in whose name the assignment was collusively procured; that thereafter accused caused a transcript of the judgment to be filed in Jerauld county, an execution to issue, a quarter section of land belonging to Waterbury to be sold, and purchased the same in the name of M. A. Stoner, his sister-in-law; that the taking of judgment and all subsequent proceedings in the action were without the knowledge of the defendant therein; that the accused deceived his client, the Illinois corporation, in that he withheld from it the information that the note had been paid in full, and did not remit or transmit to his client any of the payments made by Waterbury and received by him thereon; that, after the execution sale, Waterbury was compelled to and did redeem the land so sold by paying the sheriff $276.65; and that he was unable to obtain restitution until after he had commenced an action against the accused, when that sum, together with the assignment of the sheriff's certificate of sale, was given to Waterbury by the accused. The answer to this accusation denies all of its allegations, except such as are expressly admitted. It admits that the accused is a licensed attorney and counselor at law entitled to practice in all the courts of this state. It alleges that the purchase of the judgment mentioned in the accusation was openly and fairly conducted, and the consideration paid therefor was a fair consideration; that, when the purchase was made, Waterbury was not a resident of this state, and had no personal property therein subject to execution; that the land mentioned in the accusation was secured by Waterbury from the United States by entry and final proof, the patent to which was not issued until after the debt sued upon had been incurred, and therefore was not liable to execution for such debt; that accused believed Waterbury would be successful in his suit, and, to avoid costs and expenses, surrendered the certificate of sale, and

abandoned all claim to the land thereunder; that accused ought not to be required to further defend against the accusation, for the reason that all the transactions alleged therein, having occured more than nine years before the filing of the accusation, should be regarded as barred by lapse of time; and that during the time accused has been "a member of the bar of this court he has at all times endeavored to demean himself honorably and uprightly, and has acted in the office of attorney and counselor at law according to his best learning and discretion with all good fidelity as well to the courts as to his clients."

After the issues were thus joined, Hon. A. W. Campbell, formerly judge of the circuit court within and for the Fifth judicial circuit, was appointed referee to hear and determine all the issues of law and fact arising in the proceeding, and directed to report his findings to this court with all convenient speed. Subsequently the learned referee proceeded to try the cause at Woonsocket, in Sanborn county, where the accused appeared in person and by counsel, the prosecution being conducted by an attorney appointed by this court, and, after an unusual delay caused by the failure of the stenographer who reported the evidence to supply a transcript of the same, the referee's report was filed in this court. Thereafter the accused moved upon the report for a dismissal of the proceedings, when the present learned Attorney General, appearing by request of this court, opposed such motion. Having heard the argument of counsel in relation thereto, the motion was taken under advisement. The stenographer having subsequently produced a transcript, the referee's report was returned to the referee in order that he might examine such transcript, certify to the same if found correct, modify his report, if he should elect so to do, and refile the same without delay. On September 8, 1909, the referee again filed his report without modification, and certified to the correctness of the stenographer's transcript. An opportunity having been given the Attorney General and counsel of accused to reargue the cause, of which they declined to avail themselves, the matter was again taken under advisement, and is now here for consideration.

These, among other facts, are, in substance, found by the learned referee: That Waterbury executed the note as alleged in the accusation; that the same was delivered to the accused for collection; that an action was commenced thereon by the service of a summons; that, when such summons was served, accused informed Waterbury, he would not take judgment without further notice; that in 1896, when judgment was taken for the full amount of the note with interest, the same had been fully paid by Waterbury to the accused; that the judgment was entered in Sanborn county, a transcript filed in Jerauld county, an execution issued as alleged in the accusation; that accused, "acting as the agent of one M. A. Stoner, purchased on behalf of said Stoner the aforesaid judgment, and took an assignment from the said Avery Planter Company to said M. A. Stoner, and paid said Avery Planter Company, as consideration for said assignment, the sum of $50;" that Waterbury's land was sold and purchased by the accused as agent of and for the assignee of the judgment; that Waterbury redeemed from the sale and commenced an action; and that subsequently the amount required to redeem and the cheriff's certificate of sale were delivered to Waterbury by the accused. The referee also found as follows: "I further find that the collection, or attempted collection, of the said Waterbury note by the said S. A. Ramsey, extended over a long period of time, to wit, two or three years, and that at the time suit was begun on said note by S. A. Ramsey there was a considerable portion of said note due and unpaid, and while the carelessness, delays, and want of system in conducting this business transaction on the part of said S. A. Ramsey were and are inexcusable, and are to be condemned on the part of any practicing attorney, still I am statisfied from the evidence, and believe and find the fact to be, that said S. A. Ramsey was not and is not guilty of any willful violation of any of the duties of an attorney or counselor at law or guilty of any deceit or collusion with intent to deceive the court or any party in said proceeding. As a conclusion of law, I find that judgment should be entered dismissing this proceeding."

Manifestly the decision of the learned referee does not ex-

pressly respond to all the material issues presented by the pleadings. The charge embraces three alleged violations of duty, involving the conduct of the accused (1) toward Waterbury; (2) his conduct towards the circuit court; and (3) his conduct towards his client, the Illinois corporation. As to Waterbury, the charge is that he procured the judgment, caused execution to issue, and Waterbury's land to be sold in violation of his promise not to take judgment without further notice, and all this after the note had been fully paid. As to the circuit court, the charge is that the accused intentionally deceived the court by representing that the note was wholly unpaid when he knew it was in fact fully paid. As to his client, the Illinois corporation, the charge is that he was guilty of deceit, in that he falsely represented that the note was unpaid when he knew it was paid, and that he had found a purchaser for the judgment, when, in fact, he was purchasing it himself. Each of these alleged violations of duty are intimately connected and interdependent. If the note was in fact paid when the judgment was procured, and accused knew of that fact, he certainly violated his duty as an attorney to Waterbury, the defendant in an action then pending in a court of record, his duty to his client in the same action, and to the circuit court wherein the action was pending. "An attorney and counselor who is guilty of deceit or collusion, or consents thereto, with intent to deceive a court or judge, or party to an action or proceeding, is liable to be disbarred." Rev. Pol. Code, § 698. Viewing the referee's decision in the light most favorable to the accused, it finds that the note was, in fact, paid when the judgment was procured, but that accused had forgotten the payments, though they were personally received by him, a possible. though highly improbable, conclusion. As to whether the note was fully paid the evidence may be regarded as conflicting; there being no doubt, however, from evidence other than the testimony of either Waterbury or the accused that there had been substantial payments made to the accused when the judgment was procured. So the conclusion cannot be avoided that the court was misled into giving a judgment for the full amount of the note with interest after substantial pay-

ments had been made thereon, intentionally misled, unless the accused had forgotten such payments. As before stated, it is possible, though highly improbable, that he honestly believed nothing had been paid. To assume that such was the fact is to concede that his methods of conducting his business were inexcusably negligent. But, conceding that he had forgotten the payments, his conduct towards his client with reference to the assignment of the judgment cannot be excused, as it is disclosed by a letter from the accused to his client that he intentionally deceived such client as to the identity of the purchaser. In a letter to the Illinois corporation dated December 3, 1903, he stated: "Gentlemen: In 1892 you sent me your claim against E. S. Waterbury for collection. I brought suit against Mr. Waterbury in your favor on this claim, and after a few continuances in court, I fianally obtained judgment in your favor for $199.00 which I filed and made of record in Sanborn county, South Dakota, and where it is now of record and wholly unsatisfied. Mr. Waterbury, from 1892 to 1894, lost all he had by mismanagement and failure of crops here at that time, except his homestead, and some equities he had in some land, that finally disappeared without his realizing anything. The judgment was, and is not a lien on the homestead unless one could make it appear by proof that he had abandoned it and taken up another homestead some other place; but the burden of proof would be upon the party making the claim, and it might be expensive, and the party making the claim lose his case. Now I know a party that knows of this judgment and this matter that will give you $50.00 in cash for an assignment of this judgment to him, and he will try the experiment on this matter. If you will accept the $50.00 in cash for the assignment of this judgment please let me know, and I will prepare the assignment for you to execute and when executed you send it to the Merchant's bank at this place and I will notify the party to pay the $50.00 in to the bank for you. This is the only chance or offer I have had in this matter and I present it to you for your action." It is undisputed that "M. A. Stoner" was his sister-in-law. While the referee finds that the judgment was purchased by the accused as the agent of his sister-in-law, we

think the evidence clearly shows that it was in fact purchased by the accused for his own use and benefit. No testimony on the part of the sister-in-law or her mother, who, it is claimed, acted for her, was introduced or offered. Assuming, however, that the judgment was purchased by the sister-in-law and paid for with her money, that accused acted as her agent, as found by the referee, the conclusion cannot be escaped that he intentionally deceived his client by concealing his relations to the proposed purchaser. The judgment was in an action still pending. The relation of attorney and client still existed. In disposing of the judgment, accused could not properly act as the agent of any purchaser without at least having truthfully disclosed to the owner of the judgment all the facts within his knowledge connected with the contemplated sale. That the purchaser was the accused himself or his own sister-in-law was a material fact, the intentional concealment of which constituted a fraud upon the owner of the judgment. The moral maxim, "No man can serve two masters," is peculiarly applicable to the relation of attorney and client. The relation is one of the highest trust and confidence, requiring the attorney to observe the utmost good faith towards his client, and not to allow his private interests to conflict with those of his client. In re Egan, 22 S. D. 355, 117 N. W. 874. "In all matters connected with his trust a trustee is bound to act in the highest good faith toward his beneficiary, and may not obtain any advantage therein over the latter by the slightest misrepresentation, concealment, threat, or adverse pressure of any kind." Rev. Civ. Code, § 1617. So it conclusively appears that the accused intentionally deceived his client, a party to a pending action, one of the grounds for disbarment prescribed by the statute, and one embraced by the accusation. It is no defense to this allegation of the accusation that the Illinois corporation has made no complaint, and may not, in fact, have been injured. Attention having been called to the conduct of the accused, it became the duty of this court to direct the preparation and filing of an accusation. and to direct the prosecution of the proceeding, regardless of what may or may not have been the interest or desire of any one connected with or

affected by such conduct. Rev. Pol. Code, § 693. This court is now clothed with the sole power of admitting, suspending, and disbarring attorneys. No person can lawfully practice as such in any state court of record without its sanction. Rev. Pol. Code, §§ 685, 693. The importance of this power can be scarcely over-estimated. Most serious consequences to the legal profession and general public must constantly flow from its exercise. Regarding the court's duty with respect to persons whom it has licensed to act as attorneys and counselors at law, the Supreme Court of Pennsylvania employes the following clear and comprehensive language: "By admitting an attorney to its bar, the court presents him to the public as worthy of its confidence in all of his professional duties and relations. If afterwards it come to the knowledge of the court that he has become unworthy, it is its duty to withdraw that indorsement, and thereby cease to hold him out to the public as worthy of professional employment." Serfass Case, 116 Pa. 455, 9 Atl. 674; In re Elliott, 18 S. D. 264, 100 N. W. 431.

Clearly no court should condone the conduct of the accused towards his client in connection with the assignment of this judgment, as shown by the undisputed evidence in this proceeding. Moreover, the only fair inference arising from all the evidence is that none of tne payments received by the accused were remitted to the owner of the note. The referee found that they were sufficient to extinguish the indebtedness. In any event, substantial payments were made. So we have the case of an attorney collecting and retaining a substantial part, if not the full amount, of a note upon which he subsequently takes judgment without notice, after having promised to give notice; procuring an assignment of such judgment to his sister-in-law, while he intentionally conceals his relation to the assignee, and intentionally leads the owner of the judgment to understand that the assignee is a male person with whom he is not related; causing the sale of property to satisfy the judgment thus obtained to his sister-in-law or to himself, and the only explanation or justification offered is that, the transaction having extended over a long period of time, the accused may have forgotten all the payments. The

explanation is wholly inadequate, and, as we have shown, affords no answer or defense to the charge that the accused willfully violated his duty to his client with respect to the manner in which he procured the assignment of the judgment. His wrongdoing in this regard, which occurred in 1903, is not barred by the lapse of time, nor is the fact, if it be a fact, that he has at all times, in all other respects, "endeavored to demean himself honorably and uprightly," and has, in all other respects "acted in the office of attorney and counselor at law according to his best learning and discretion, with all good fidelity as well to the court as to his client;" any reason why he should not suffer the consequences of such wrongdoing. "While we cannot overlook the fact that striking the name of the accused from the roll and revoking his license may result in serious consequences to himself and family, we cannot be unmindful of the duty we owe to ourselves, the courts of the state, the members of the bar, and the community in general." In re Egan, supra. While the conclusion or recommendation of the learned referee is entitled to and has received due consideration, the undisputed evidence contained in the record cannot be ignored. The responsibility for the determination of such proceedings as the one at bar rests alone with this court. Its duty, however unpleasant, is plain, and should be performed without regard to any departure from the modes of procedure in ordinary cases which have not deprived the accused of a fair and impartial hearing.

The motion to dismiss is denied, the name of the accused stricken from the roll, and his license revoked.